# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LORANCE RIDELL DEVER,** ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> **ROBERT PATTON, DOC Director,** ) <br> ) <br> Respondent. ) | **Case No. CIV 12-353-JHP-KEW** |

## OPINION AND ORDER

This matter is before the court on petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at Cimarron Correctional Facility in Cushing, Oklahoma, attacks his convictions and sentences in McCurtain County District Court Case No. CF-2010-147A for Murder in the First Degree and Shooting with Intent to Kill. He sets forth the following grounds for relief:

I. Petitioner was denied a fair trial by the trial court's refusal to give his requested instructions regarding accomplice testimony and alibi.

II. The evidence was insufficient to convict petitioner, because the accomplice testimony was not corroborated or credible.

III. The trial court's failure to follow statutory procedure in answering a jury question denied petitioner a fair trial.

IV. (A) Petitioner was denied a fair trial by the improper admission of bad character evidence.

(B) The prosecutor's intentional use of false or misleading testimony denied petitioner a fair trial.

(C) Petitioner was denied the effective assistance of trial counsel.

      (D)    Petitioner's sentences are excessive when compared to those of his co-defendants.

      (E)    The accumulation of error in this case denied petitioner a fair trial.

The respondent concedes that petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

    A.    Petitioner's direct appeal brief.

    B.    The State's brief in petitioner's direct appeal.

    C.    Summary Opinion affirming petitioner's judgment and sentence. *Dever v. State*, No. F-2011-431 (Okla. Crim. App. June 21, 2012).

    D.    Transcripts of petitioner's preliminary hearing, trial, and sentencing.

    E.    Original Record

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

Sometime before 3:40 p.m. on February 28, 2010, Rodney Fields and Jordon Garrett

were sitting in the front seat of Fields' white Lincoln Town Car, when they were shot by petitioner and his brother Marvel Dever. (Tr. II 253-54; Tr. III 446, 593; State's Exhibits 7-9). Mr. Garrett was killed, and Ms. Garrett was wounded.

Khyrie Willis, the Dever brothers' cousin, was visiting from Texas at their home in Idabel. (Tr. III 432-33). Petitioner and Marvel both told Willis that they did not like Fields, but they did not disclose the reason for their animosity. (Tr. III 436-37).

At the direction of petitioner on the afternoon of the murder, Willis drove the brothers to the house where Fields was sitting in his car. (Tr. III 442-43). Willis was driving his maroon Lincoln. (Tr. III 434-35, 439; State's Exhibit 1). The three men first stopped at the house of a man called "Blue" to get a gun for Willis. (Tr. III 438-441). Petitioner went into Blue's house and returned with a .380 pistol holding only three bullets and gave it to Willis. (Tr. III 440-41). Petitioner and his brother already had pistols, a .357 revolver and a 9 mm semi-automatic pistol. (Tr. III 439-41).

Willis followed petitioner's directions to the house in Idabel where Fields was parked under a carport in his white Lincoln. (Tr. II 264, Tr. III 442-43). Willis stopped his maroon Lincoln in the intersection by the house where Fields was parked, and petitioner and his brother exited the car first. (Tr. III 443-44). They went around the front of the house where Fields was parked, and Willis walked toward the back of the house behind the car. (Tr. III 445). Petitioner was wearing a dark blue bandanna around his face, his brother Marvel had a dark blue scarf with stripes pulled up over his face, and Willis had an orange bandanna over his face. (Tr. III 437-38, 454). Petitioner and his brother both began to fire into the car where Fields and Ms. Garrett were sitting. (Tr. III 446).

A gray Ford Taurus was parked in the yard, and Willis fired the three bullets from the

.380 into that car, because he thought someone was firing at his cousins from behind the vehicle. (Tr. III 446-47; State's Exhibits 9A, 10A, and 11A). Willis saw Fields and a girl in the white Town Car after the shots were fired, and Field's head was slowly dropping. (Tr. III 449).

Willis fled the crime scene in his maroon Lincoln with petitioner and petitioner's brother as passengers. (Tr. III 449-50). As they were leaving, Willis saw children running from the area toward a nearby nursing home. (Tr. III 450). He drove his car to the Devers' sister's house and parked it there. (Tr. III 450-51).

The murder occurred at Wanda Daniels' house, where she was hosting a barbeque that afternoon. (Tr. II 262). She heard gunshots and called 911. (Tr. 11 265). When she went outside, she saw that Fields' car was "just shot up," and "blood was just everywhere." (Tr. II 268). She also saw that Fields and Garrett had been shot, and she thought both were dead until Garrett raised up in the seat. (Tr. II 268). Fields did not move and was transported by ambulance to the hospital, where he was pronounced dead on arrival. (Tr. II 268, 283-84).

Ms. Garrett testified that she and Fields were listening to music and talking in the white Lincoln at the time of the shooting. (Tr. II 253-54). Jodi Chandler, Ms. Daniels' daughter, had been in the backseat of the car, but just before the shooting she left to put a CD in her mother's Taurus that was parked in the yard. (Tr. II 253-54).

Ms. Garrett was talking to Fields, when he suddenly pushed her head down to the floorboard. (Tr. II 254-55). When she came up, blood was running out of her mouth. (Tr. II 254-55). She had been shot three times but was able to walk into the house. (Tr. II 254-55). She did not look at Fields after the shooting and did not see the shooters. (Tr. II 255).

Ronald Daniels, Wanda Daniels' 10-year-old son, was outside the house playing with

4

two younger relatives at the time of the shooting. (Tr. II 228, 230-31). He and the two other children were walking to a creek near his house, when he saw a maroon car pull in front of the house. (Tr. II 230-31). He had seen the car driving around his house earlier that day. (Tr. II 230-31). At trial Ronald identified a picture of Willis' maroon Lincoln as the car he saw the day of the shooting. (Tr. II 232; State's Exhibit 1). He saw three people get out of Willis' maroon Lincoln with "du-rags" around their faces. (Tr. II 233). He said one of the bandannas was blue, and the other two were black. (Tr. II 233).

Ronald watched the three men split up when they got out of the car, with one going to one side of his house and the other two going to the other side. (Tr. II 233-34). The men started shooting, so he grabbed a big stick and ran. (Tr. II 234). He told the other two children to go across the field. (Tr. II 234-35). When the shooting stopped, Ronald saw the three men get back into Willis' car and drive away together. (Tr. II 235).

Valesa Jackson saw petitioner at a park near the murder scene earlier that afternoon. (Tr. II 206-13). She had known him as "Spanky" since they were children in grade school. (Tr. II 205-206). Petitioner was sitting in a maroon Lincoln with two other men. (Tr. 207-09; State's Exhibit 1). Petitioner was in the passenger seat with a blue bandanna around his neck, and the backseat passenger had a blue bandanna around his face. (Tr. II 209). Ms. Jackson did not pay attention to the driver. (Tr. II 209).

Ms. Jackson left the park after a short time and drove to her mother's house nearby. (Tr. II 211-212). When she got out of her car at her mother's house, she heard loud noises sounding like fireworks, but she dropped down to the ground when the other people said the sounds were gunshots. (Tr. II 213). The murder occurred around the corner, and Ms. Jackson testified she could see Ms. Daniels' house from her mother's house, but she did not

5

see the shooting. (Tr. II 214).

The medical examiner testified that Fields was shot six times--four times in the head and twice in the chest. (Tr. II 298-301). Each individual wound potentially could have been fatal. (Tr. II 301-02).

Petitioner did not testify at trial, but he called Leo Lanham, a.k.a. Blue, to testify. (Tr. III 645-47, 668). Lanham, a convicted felon who was on probation at the time of the murder, denied providing a gun to petitioner, petitioner's brother, or Willis. (Tr. III 645-47).

Petitioner's older brother Joey Dever testified that he gave petitioner a ride to work at the Tyson chicken plant the afternoon of the murder. (Tr. III 660-61). He, however, was not very certain of the time, saying, "I can't really remember what time it was when I had took him to work. I want to say probably about--probably about--somewhere probably about 4:00 at the latest, somewhere around up in there." (Tr. III 661, 664). He also was not sure when petitioner's shift started. (Tr. III 664).

**Grounds I and III: Jury Instructions and Jury Question**

Petitioner alleges in Ground I that the trial court erred in its instructions on the requirement of accomplice corroboration and on the defense of alibi. In Ground III he claims the trial court erred in the manner it answered a question from the jury during deliberations about whether there was a record of the time petitioner clocked into work on the day of the murder. Specifically, the jury's note asked, "Is there a record of Mr. Dever clocking into work at Tyson's on the date Feb. 28, 2010?" (Ct. Exh. 1). The trial court answered the question in writing: "You have all the evidence that is proper for you to consider." *Id*. The record does not show whether the prosecutor and defense counsel were notified of the question or whether either objected to this procedure. On direct appeal the OCCA found no

6

merit in either proposition:

> [Regarding the jury instructions] . . . while the rationale behind the trial court's decision to omit one of the standard OUJI instructions on accomplice corroboration (OUJI-CR (2nd) No. 9-32), over defense objection, is not clear from the record, we find any error to be harmless beyond a reasonable doubt. The rest of the instructions (OUJI-CR (2nd) No. 9-28 in particular) sufficiently explained the law on this subject. Furthermore the evidence "corroborating" the accomplice testimony, albeit circumstantial in nature, was sufficient on its own to support a conviction. *Allen v. State*, 522 P.2d 243, 245-46; *Gaines v. State*, 302 P.2d 798, 800. The trial court's refusal to give a special instruction on the accomplice's credibility issues, due to his role as an "informant" against Appellant (OUJI-CR (2nd) No. 9-43), was not error. The subject was sufficiently addressed elsewhere. A general OUJI instruction cautioned the jury to consider the motives any witness may have to slant his testimony. But most importantly, an informant-credibility instruction was rendered superfluous by the very requirement of accomplice corroboration--which is, in effect, a credibility test that does not apply to other kinds of "informants." Okla. Stat. tit. 22, § 742; OUJI-CR (2nd) Nos. 9-25 to 9-32, 10-8. The trial court's refusal to give an instruction on alibi evidence, over defense objection, was not error, as the defense evidence did not sufficiently raise alibi as a defense. *Baxter v. State*, 364 P.2d 705, 708. [This proposition] is denied.

*Dever*, No. F-2011-431, slip op. at 2-3.

> [Regarding the jury's question] . . . when the trial court answers a jury communication during deliberations, but the record does not clearly show that proper statutory procedure was followed, a presumption of prejudice arises; that presumption, however, can be overcome if the record shows the trial court's answer was entirely proper. Okla. Stat. tit. 22, § 894; *Grayson v. State*, 687 P.2d 747, 750 (Okla. Crim. App. 1984). Here, while it is not clear whether the trial court followed § 894 to the letter, the court's answer to the jury's question was entirely proper. Any presumption of prejudice is thus overcome, and [this] proposition is denied.

*Id.*, slip op. at 3-4.

The respondent asserts the issue of jury instructions regarding corroboration and alibi is an issue of state law that is not cognizable in federal habeas corpus.

> In a habeas corpus proceeding attacking a state court judgment based

7

> on an erroneous jury instruction, a petitioner has a great burden. *Lujan v. Tansy*, 2 F. 3d 1031, 1035 (10th Cir. 1993), *cert. denied*, 510 U.S. 1120 (1994). A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial. *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990), *cert. denied*, 498 U.S. 961 (1990). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id*. at 155. The degree of prejudice from the instruction error must be evaluated in the context of the events at the trial. *United States v. Frady*, 456 U.S. 152, 169 (1982).

*Maes v. Thomas*, 46 F. 3d 979, 984 (10th Cir.), *cert. denied*, 514 U.S. 1115 (1995).

In this case Ms. Jackson's testimony placed petitioner and two other men in Mr. Willis' maroon Lincoln a few minutes before the shooting. Ten-year-old Ronald Daniels saw the maroon Lincoln pull up, and he watched three men exit in front of his house where the murder occurred. Ronald heard gunshots and ran away. This evidence was more than sufficient to place petitioner in the car used in the murder very close to the time and place of the murder, and it tended to connect petitioner to the murder. The jury was given several instructions on accomplice testimony, including Instruction No. 9-28, OUJI-CR (2d), stating in pertinent part:

> . . . It is sufficient corroboration if you, in your discretion, find from the evidence, beyond a reasonable doubt, that the testimony of the accomplice is corroborated as to some material fact or facts by independent evidence tending to connect the defendant with the commission of the crime.

(O.R. 201 Instruction No. 23, Dkt. 6-3 at 32). The court finds the jury was properly instructed on the requirement for independent evidence tending to connect the defendant with the crime.

Petitioner also argues that the trial court erred in its refusal to give an instruction on the defense of alibi. Such an instruction is appropriate under Oklahoma law, if there is

8

evidence that petitioner was at another place at the time of the crimes charged. *See Novey v. State*, 709 P.2d 696, 697 (Okla. Crim. App. 1985).

The evidence at trial was that the murder occurred sometime before 3:40 p.m. (Tr. III 593). Petitioner's older brother Joey Dever testified he gave petitioner a ride to work at the Tyson chicken plant the afternoon of the murder. (Tr. III 660-61). Joey, however, was uncertain of the time of the ride and did not know when petitioner's shift began. (Tr. III 661, 664).

Petitioner's father Otis Dever testified he saw petitioner watching a football game, but admitted he did not pay attention to the time when petitioner left the house. (Tr. II 306-07). This testimony did not place petitioner at work at the time of the shootings, and petitioner could have left his father's home for a number of purposes, including murder. The court finds the trial court did not err in the instructions on this issue, and petitioner was not denied a fair trial.

Regarding the jury's note about whether there was a record of petitioner's clocking into work on the day of the murder, the court finds the trial court responded correctly in writing. Plaintiff argues he was prejudiced, because the trial court allegedly did not follow the requirements of Okla. Stat. tit. 22, § 894, by bringing the jury back into the courtroom and answering the question in the presence of all parties. Petitioner acknowledges, however, that the record is silent as to whether this procedure was followed.

Even if the record supported petitioner's claim about the procedure of answering the jury's question, this is a matter of state law that is not cognizable in a federal habeas corpus action. Moreover, petitioner has not shown how he was prejudiced by the court's answer to the jury's question. If there actually was a time card to support petitioner's alibi claim, he

9

could have produced it, but did not.

After careful review, the court finds the OCCA's determination of the claims in Ground I and Ground III were consistent with federal law, and petitioner has not shown he was denied his constitutional rights by the rulings. 28 U.S.C. § 2254(d). Grounds I and III of the petition are meritless.

**Ground II: Corroboration of Accomplice-Witness Evidence**

Petitioner alleges the evidence presented at trial was insufficiently corroborated under Oklahoma law to convict him of first degree malice murder and shooting with intent to kill. He is not claiming the evidence was insufficient to prove Mr. Fields was murdered or that Ms. Garrett also was shot in the attack. Instead, he asserts the testimony of Khyrie Willis was not corroborated as required under Oklahoma law.

The Oklahoma Court of Criminal Appeals (OCCA) denied relief on direct appeal:

> . . . [W]hile the evidence against Appellant did include the testimony of an accomplice in the shootings (who testified pursuant to a plea agreement with the State), that was hardly the only evidence linking Appellant to the crimes. We find the accomplice testimony was sufficiently corroborated with other evidence linking Appellant to the crimes themselves, not just to the other perpetrators thereof. Okla. Stat. tit. 21, § 742; *Glossip v. State*, 157 P.3d 143. 152 (Okla. Crim. App. 2007); *Collier v. State*, 520 P.2d 681, 683 (Okla. Crim. App. 1974). [This proposition] is denied.

*Dever v. State*, No. F-2011-431, slip op. at 2 (Okla. Crim. App. June 21, 2012).

> In particular, one eyewitness, who was personally acquainted with Appellant, saw him in a car which matched a description of the vehicle driven by the gunmen to the scene of the crime. This occurred a short time before the shootings, and a short distance away from the crime scene. This witness described Appellant as wearing a bandana around his neck, and another passenger wearing a bandana over his face--all of which was consistent with other (non-accomplice) eyewitness testimony describing the gunmen. Contrary to Appellant's suggestion, while accomplice testimony must be corroborated, such corroborative evidence need not amount to additional direct

observation of the defendant committing the crime.

*Dever*, slip op. at 2 n.2. The OCCA's factual findings are entitled to a presumption of correctness, unless petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

There is no constitutional right to corroboration of an accomplice-witness's testimony. *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007), *cert. denied*, 554 U.S. 907 (2008); *Scrivner v. Tansy*, 68 F.3d 1234, 1239 (10th Cir. 1995), *cert. denied*, 516 U.S. 1178 (1996). Furthermore, under Oklahoma law "it is not necessary that an accomplice's testimony to be corroborated in all material respects." *Cummings v. State*, 968 P.2d 821, 830 (Okla. Crim. App. 1998) (citation omitted).

As set forth by the OCCA and the above facts in this Opinion and Order, the evidence was more than sufficient to corroborate the testimony of Mr. Willis. To the extent petitioner is claiming a violation of state law, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)).

Here, the court finds petitioner has failed to show the decision by the OCCA on this state law issue was contrary to, or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). The court further finds that the OCCA's determination was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). This ground for habeas relief fails.

**Ground IV(A): Evidence of Bad Character**

Petitioner next claims the prosecutor engaged in misconduct when offered evidence of other crimes. Prior to trial the State filed a notice of intent to offer evidence of other crimes. Asserting the evidence went to motive, the State wanted to present evidence of a grand larceny allegedly committed by petitioner and Rodney Fields, the murder victim. Petitioner objected, arguing in part that there was no visible connection between that crime and the shootings for which he would stand trial, and the evidence would be unduly prejudicial. ( O.R. 109). The trial court took the matter under advisement, but ultimately overruled petitioner's objection during trial. (Motion Tr. 37; Tr. II 242).

Officer Billy Conaway testified he was with the McCurtain County Sheriff's Office in 2008, when he investigated Rodney Fields about the theft of a Honda four-wheeler and a Honda dirt bike. (Tr. II 243-45). Both Fields and petitioner were suspects, and Fields implicated petitioner. (Tr. II 245). When Conaway advised petitioner of the accusation by Fields, petitioner reacted with a "pissed off expression." (Tr. II 246). Montavious Moore also testified about this incident, though his testimony was that petitioner did not blame Fields for getting him in trouble. (Tr. III 425-26). Petitioner argues there is no obvious connection between the prior larceny and the shooting for which petitioner stood trial, and the only connection was the State's assertion that the earlier crime provided the motive for the later crime.

Petitioner also complains that the State elicited the following testimony from Khyrie Willis regarding the orange and blue bandannas that petitioner and his two accomplices were wearing at the time of the shooting:

Q:  . . . Now, was [sic] there any particular reasons you guys had those colors?

A: Gang sense.

Q: I'm sorry?

A: Gang sense.

Q: Gang symbols?

A: Yeah.

(Tr. III 454-55).

The State then elicited from Leo Lanham, from whom Khyrie Willis alleged petitioner had obtained one of the guns used during the shootings, that Lanham is a "107 Hoover Crip," and blue and orange are "our colors." (Tr. III 648-49). Lanham also testified he did not know whether petitioner was in a gang. (Tr. III 649). The State did not offer any evidence suggesting the shooting was in any way connected to gang activity, and the State did not attempt to argue that gang affiliation was the motivation for the crime.

The OCCA denied relief on this claim:

> . . . [E]vidence that the murder victim in this case had implicated petitioner in a property theft tended to show ill feelings between the two men, which was relevant as a possible motive for the shootings. The trial court did not abuse its discretion in admitting this evidence over defense objection. Okla. Stat. tit. 12 § 2404(B); *Frye v. State*, 606 P.2d 599, 604 (Okla. Crim. App. 1980). As for the prosecutor's references to possible gang affiliation among the perpetrators: while questions in this regard appear to have had no relevance to the issues in the case (as no gang-related motive for the shooting was suggested), and were therefore improper, they were brief and never objected to, and we find no plain error in them. *Ochoa v. State*, 936 P.2d 583, 597 (Okla. Crim. App. 1998). [This proposition] is denied.

*Dever*, slip op. at 4.

> The jury was made aware that Appellant was never prosecuted for the theft. This reduced the unfairly prejudicial effect of the evidence, but did not affect its probative value, because a fabricated allegation of crime can provoke

13

the same ill feelings in the accused as a true one.

*Id.* at 4 n.3.

"As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered 'the trial so fundamentally unfair as to constitute a denial of federal constitutional rights,' *Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (quotations and citations omitted)." *Moore v. Marr*. 254 F.3d 1235, 1246 (10th Cir.), *cert. denied*, 534 U.S. 1068 (2001).

After careful review, the court finds the evidence of other crimes was relevant to show petitioner's possible motive and intent when he shot Mr. Fields. The court further finds this evidence did not render petitioner's trial fundamentally unfair or improperly influence his sentence. Therefore, the OCCA's determination of this issue was in accordance with 28 U.S.C. § 2254(d), and petitioner is not entitled to habeas relief on this claim.

As for petitioner's allegation concerning his alleged gang affiliation, the court agrees that the gang references were erroneous, but the issue of other-crimes evidence is a matter of state law. *Glover v. Newton-Embry*, No. CIV-07-292-M, 2009 WL 2413925, at *12 (unpublished). "[T]he [state] courts' interpretation of the state . . . statute is a matter of state law binding on this court." *Parker v. Scott*, 394 F.3d 1301, 1319 (10th Cir. 2005) (quoting *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002)). Because the OCCA's determination of this issue was not contrary to, or an unreasonable application of relevant federal law, and petitioner was not denied a fundamentally fair trial, this claim of error also fails.

**Ground IV(B): Prosecutorial Misconduct**

Petitioner claims the prosecutor engaged in misconduct during trial when he elicited allegedly false testimony from Agent Dansby concerning Willis' crime. Dansby testified that Willis "was charged with the crime that the evidence showed and that I believe he committed." (Tr. III 601). Petitioner argues that Willis was guilty of first degree murder, but the prosecutor presented knowingly false testimony from Dansby that the evidence supported a charge of assault and battery with a deadly weapon. (Tr. III 600). Petitioner maintains Dansby's answer minimized Willis' culpability, thereby minimizing the significance of the plea bargain Willis reached with the State and bolstering Willis' credibility. The respondent asserts the prosecutor's questions were proper and did not deny petitioner a fair trial or sentencing. Furthermore, there was no objection by defense counsel to Agent Dansby's testimony. The OCCA found no relief was warranted for this claim:

> . . . [W]e cannot agree with Appellant's claim that the prosecutor sponsored false or misleading testimony. A detective testified that the crime-scene evidence supported the lesser charge that the accomplice was allowed to plead guilty to in exchange for his cooperation. Yet regardless of what the accomplice pled to, or the detective's opinion about his relative culpability, the jury was instructed that the witness was an accomplice as a matter of law--*i.e.*, that he could have been charged with the very same crimes Appellant was facing. Thus, the jury was not misled into believing that the accomplice was some minor participant. We find neither misconduct on the part of the prosecutor, nor any prejudice flowing from the detective's testimony. *See Reed v. State*, 657 P.2d 662, 664 (Okla. Crim. App. 1983). . . .

*Dever*, slip op. at 4-5.

> The accomplice was allowed to plead guilty to Assault and Battery with Dangerous Weapon. The evidence supported his claim that he only fired gunshots at an unoccupied vehicle, parked next to the vehicle that held the two victims.

*Id.*, slip op. at 4 n.4.

> In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the state's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006).

Here, the court finds the OCCA examined this claim on the merits and found the prosecutor's question did not sponsor false or misleading testimony, and petitioner was not prejudiced by the question or the response by Agent Dansby. This determination was consistent with federal law, so habeas relief cannot be granted.

**Ground IV(C): Ineffective Assistance of Counsel**

Petitioner claims his trial counsel was ineffective in failing to object to (1) the testimony by Mr. Willis about the gang-related nature of the colors of the bandannas worn during the crimes, (2) the testimony of Agent Dansby that Mr. Willis' conduct supported a charge of assault and battery with a deadly weapon, and (3) the manner in which the trial court answered the jury's question about petitioner's time card from his job on the day of the murder. The OCCA reviewed the claims and found trial counsel was not ineffective:

> . . . [W]e reject Appellant's three claims that his trial counsel was ineffective. First, even assuming trial counsel was timely notified of the jury's question during deliberations, the lack of prejudice in the trial court's response . . . bars any finding that counsel was ineffective. *Sanchez v. State*, 223 P.3d 980, 1012 (Okla. Crim. App. 2009). Second, our finding that brief questions

16

>about "gang colors" were harmless . . . also bars any conclusion that Appellant was prejudiced by counsel's failure to object. *Id.* Trial counsel's failure to object to a detective's opinion about the accomplice's culpability was also harmless beyond a reasonable doubt, as the jury was instructed to treat the witness as an accomplice as a matter of law. Trial counsel was not ineffective, and [this proposition] is denied.

*Dever*, slip op. at 5 (footnote omitted).

"There is a strong presumption that counsel provided effective assistance of counsel, and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989). To prevail on his claim of ineffective assistance of counsel, petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

As discussed above, petitioner's claims concerning the colors of the bandannas, Agent Dansby's testimony that Willis' conduct supported a charge of assault and battery with a deadly weapon, and the trial court's answer to the jury's question all fail on the merits. Therefore, petitioner's counsel could not have been ineffective in failing to raise objections concerning the claims at trial. Because petitioner suffered no prejudice from counsel's alleged failure to object to these issues, counsel was not ineffective under *Strickland*.

The OCCA clearly relied on *Strickland* in the *Sanchez* case that is cited in its analysis of petitioner's ineffective assistance of counsel claim. This court finds the OCCA's ruling on this issue was not contrary to, or an unreasonable application of *Strickland*, and petitioner's claim of ineffective assistance of counsel is meritless.

17

**Ground IV(D): Excessive Sentence**

Petitioner complains that his sentence of life imprisonment with the possibility of parole is excessive when compared to the sentences of his codefendants. Mr. Willis was sentenced to seven years' imprisonment, with all but one year suspended, and petitioner's brother Marvel Dever received a 25-year prison sentence. The OCCA denied the claim:

> . . . [W]hile Appellant compares the sentences he received to those of his two co-defendants, he fails to note that one co-defendant turned himself in to the authorities and agreed to testify as a State's witness, while the other co-defendant waived his right to a jury trial. Appellant, on the other hand, exercised his right to a jury trial; the jury found him guilty, but recommended the minimum sentence for First Degree Murder. In addition, the trial court ordered concurrent service of Appellant's two sentences. We cannot say the sentences imposed are shocking to the conscience. *Rea v. State*, 34 P.3d 148, 149 (Okla. Crim. App. 2001).

*Dever*, slip op. at 5-6.

> . . . We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. *See Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968). Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute. *See Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir. 1988). In this case, the sentences [petitioner] received are within the statutory range of permissible punishment. . . .

*Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001). The court finds petitioner's sentence was within the statutory range of permissible punishment, so habeas relief is not warranted.

**Ground IV(E): Cumulative Error**

Finally, petitioner claims the alleged accumulation of errors in his trial denied him a

fair trial. The OCCA held that "having found the one error identified above to be harmless [the prosecutor's references to possible gang affiliation among the perpetrators], there can be no error by accumulation." *Dever*, slip op. at 6 (citing *Hope v. State*, 732 P.2d 905, 908 (Okla. Crim. App. 1987)).

"Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.), *cert. denied*, 522 U.S. 844 (1997) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990)). *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was violated.").

Here, the court finds the OCCA's determination of this claim was consistent with federal law. Therefore, this ground for habeas of relief is meritless.

**ACCORDINGLY**, petitioner's petition for a writ of habeas corpus is DENIED, and this action is, in all respects, DISMISSED.

**DATED** this 30th day of September 2015.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma